UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Brittni A. Gaines,  Civ. No. 18-838 (PAM/HB)

          Plaintiff,

v.  **MEMORANDUM AND ORDER**

City of Minneapolis, and
Officer Nathan Bauer,

          Defendants.

This matter is before the Court on Defendants' Motion for Summary Judgment. For the following reasons, the Motion is denied.

**BACKGROUND**

On September 24, 2017, Plaintiff Brittni Gaines was out with a friend in the Uptown neighborhood of Minneapolis. By her own admission, she had a lot to drink. In fact, she has no memory of any of the events described below. At about 9:30 pm, Gaines crossed against the light at Lagoon and Hennepin, a busy intersection. (Carter Decl. (Docket No. 37) Ex. 3 (squad video) at 21:39:36.) Unfortunately for her, one of the cars she walked in front of was a Minneapolis squad car containing Defendant Officer Nathan Bauer.

Although the squad was in the left westbound lane of Lagoon, it turned across the right lane and came to a stop on the curb cut-out for the busy intersection. (Id. at 21:39:44.) There were many people milling about on the sidewalk. Bauer exited the car and began walking down the sidewalk. (Id. at 21:39:50.) When his body-cam audio kicks in, he can

be heard saying, "Stop! You're under arrest!" to a woman walking ahead of him, Plaintiff Gaines. (Id. Ex. 4 (Bauer body-cam video) at 02:39:51.) At the same time, Bauer grabs Gaines's arms from behind. (Id.) She turns her head toward him, saying, "Huh?" (Id. at 02:39:54.) Bauer then states, "You play stupid games, you get stupid prizes," as he brings Gaines's hands behind her back. (Id. at 02:39:56.) She asks, "What do you mean?" while continuing to turn toward him. (Id. at 02:39:56-:57.) Bauer screams "Stop!" and nearly simultaneously throws Gaines to the sidewalk. (Id. at 02:39:58.)

Defendants contend that Bauer was trying to use an arm-bar takedown of Gaines, which would have allowed him to control her as she went to the ground. But they acknowledge that he did not perform the takedown correctly, resulting in Gaines's face slamming against the curb.

The police ultimately transported Gaines to the hospital. She was not charged with any crime arising out of the incident, and she suffered no long-term injury. Her two-Count Complaint claims excessive force[1] under 42 U.S.C. § 1983 against Bauer and state-law battery against both the City and Bauer.

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and inferences that "may be reasonably drawn from the evidence in the light most favorable to the nonmoving party." Enter. Bank v. Magna Bank of Mo.,

---

[1] The Complaint claims unreasonable seizure as well as excessive force, but neither party discusses this aspect of Gaines's claims.

92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). And when there is video evidence that does not "demonstrably contradict[]" the parties' differing version of the events, the Court must view that evidence in the light most favorable to the non-moving party. Mann v. Yarnell, 497 F.3d 822, 827 (8th Cir. 2007).

**A.     Qualified Immunity**

Qualified immunity protects police officers from suit unless "their conduct . . . violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To evaluate whether an officer is entitled to qualified immunity, the Court must determine whether the facts alleged "make out a violation of a constitutional right." Pearson v. Callahan, 555 U.S. 223, 232 (2009). The Court must also determine whether the right at issue was "clearly established" at the time of the alleged misconduct. Saucier v. Katz, 533 U.S. 194, 201 (2001). Thus, a police officer is "entitled to summary judgment based on qualified immunity unless (1) the evidence, viewed in the light most favorable to the nonmoving party, establishes a violation of a federal constitutional or statutory right, and (2) the right was clearly established at the time of the violation." Capps v. Olson, 780 F.3d 879, 884 (8th Cir. 2015).

The Supreme Court has recently emphasized that the qualified-immunity inquiry should focus on whether there are any cases "where an officer acting under similar circumstances as [the defendant officer] was held to have violated the [Constitution.]"

3

White v. Pauly, 137 S. Ct. 548, 552 (2017). In other words, while there does not have to be a case "'directly on point' for a right to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" Id. at 551 (quoting Mullenix v. Luna, 136 S. Ct. 305, 308 (2015)). The legal question for the Court to answer is "whether the facts alleged by the plaintiff are a violation of clearly established law." Franklin for Estate of Franklin v. Peterson, 878 F.3d 631, 635 (8th Cir. 2017).

## B. Excessive Force

"Since this case presents an issue of whether an officer used excessive force, the case must be analyzed under the Fourth Amendment's objective reasonableness standard." Craighead v. Lee, 399 F.3d 954, 961 (8th Cir. 2005).

> [P]roper application [of the objective reasonableness standard] requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

Graham v. Connor, 490 U.S. 386, 396 (1989) (citation omitted). When applied to excessive-force claims, "the test is whether the amount of force used was objectively reasonable under the particular circumstances." Greiner v. City of Champlin, 27 F.3d 1346, 1354 (8th Cir. 1994). These considerations should be made without regard for the officer's subjective intent or motivation. Graham, 490 U.S. at 397.

Defendants contend that it was not clearly established at the time of the incident that Bauer's actions were not objectively reasonable, and thus that he is entitled to qualified immunity on Gaines's § 1983 claim. Indeed, Defendants contend that Gaines's excessive-force claim cannot succeed unless there is a case establishing that:

4

it was unconstitutional to use an arm bar takedown on a suspect who had walked into oncoming traffic against a red light on a busy, dark Saturday night; who had had her face illuminated with a police spot light when she was walking a couple feet in front of a squad car; who had been right in front of a squad car when the sirens blared out and emergency lights flashed; who did not comply with police commands to stop and submit to arrest; and who twisted and pulled away from an officer as he grabbed her arms and said "stop you're under arrest."

(Defs.' Supp. Mem. (Docket No. 36) at 16-17.) But Supreme Court precedent provides that the qualified-immunity inquiry depends on a case with "similar" facts, not "the same" facts. Indeed, "there is no requirement that [the plaintiff] must find a case where 'the very action in question has previously been held unlawful,' so long as 'existing precedent [has] placed the statutory or constitutional question beyond debate.'" Rokusek v. Jansen, 899 F.3d 544, 548 (8th Cir. 2018) (quoting Rohrbough v. Hall, 586 F.3d 582, 587 (8th Cir. 2009); Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)) (second alteration in original)). Defendants' attempt to overly narrow the inquiry is not well taken.

The relevant question is whether it was clearly established that a police officer approaching a non-fleeing misdemeanant from behind on a crowded street could forcefully take that misdemeanant to the ground less than five seconds after apprehending her. And there many cases establishing that a "reasonable officer would have understood that he could not forcefully take down [Gaines]—a nonviolent, nonthreatening misdemeanant who was not actively resisting arrest or attempting to flee—in the allegedly violent and uncontrolled manner that [Bauer] did." Karels v. Storz, 906 F.3d 740, 747 (8th Cir. 2018) (citing cases).

Defendants rely on a recent en banc opinion of the Eighth Circuit Court of Appeals to argue that Bauer's conduct here was reasonable as a matter of law, but the facts underlying that decision are far different from the situation here. Kelsay v. Ernst, 933 F.3d 975 (8th Cir. 2019) (en banc). First, the arrestee in Kelsay had interacted with the police officers seconds before the takedown at issue. She therefore knew that person attempting to stop her from behind was a police officer. Id. at 978. And when the officer grabbed her arm and told her to stop walking, the arrestee ignored him and continued walking away. Id. The en banc Court of Appeals found that it was not clearly established "that a deputy was forbidden to use a takedown maneuver to arrest a suspect who ignored the deputy's instruction to 'get back here' and continued to walk away from the officer." Id. at 980.

Defendants contend that Gaines continued to walk away as Bauer told her to stop, and thus that Kelsay applies. But this contention is merely Defendants' interpretation of the video evidence. Viewing that evidence in the light most favorable to Gaines, a reasonable jury could find that Gaines was not attempting to flee or resisting arrest, but rather was merely confused and perhaps that she trying to pull away from someone she thought was attacking her from behind. The video evidence presents multiple questions of fact for a jury to determine, and summary judgment is not appropriate on the qualified-immunity issue.

**C.  Official Immunity**

"As distinguished from the 'qualified immunity' afforded peace officers when addressing 42 U.S.C. § 1983 claims, under Minnesota law a public official is entitled to official immunity from state law claims when that official is charged by law with duties

6

that require the exercise of judgment or discretion." Johnson v. Morris, 453 N.W.2d 31, 41 (Minn. 1990). The official immunity doctrine applies to police officers in situations like the one presented here, unless the official committed a willful or malicious wrong. Pletan v. Gaines, 494 N.W.2d 38, 40 (Minn. 1992). When considering whether an official has acted willfully or maliciously, courts "'consider whether the official has intentionally committed an act that he or she had reason to believe is prohibited.' This 'contemplates less of a subjective inquiry into malice, which was traditionally favored at common law, and more of an objective inquiry into the legal reasonableness of an official's actions.'" Hassan v. City of Minneapolis, 489 F.3d 914, 920 (8th Cir. 2007) (quoting State by Beaulieu v. City of Mounds View, 518 N.W.2d 567, 571-72 (Minn. 1994)).

Because there are factual disputes as to what transpired here, a reasonable jury could determine that Bauer acted with the requisite intent to foreclose official immunity. The application of official immunity must await the factfinder's determination of the facts.

**CONCLUSION**

Questions of fact preclude the entry of summary judgment here. Accordingly, **IT IS HEREBY ORDERED that** Defendants' Motion for Summary Judgment (Docket No. 34) is **DENIED**.

Dated: December 26, 2019

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge

7